Robert PLADSON, Plaintiff
and Appellee,

v.

Walter R. HJELLE, State Highway Commissioner, Defendant and Appellant.

Civ. No. 10847.

Supreme Court of North Dakota.

May 22, 1985.

Thomas F. Murtha, Dickinson, for plaintiff and appellee at administrative hearing and in District Court. No appearance or brief on appeal.

Robert E. Lane, Asst. Atty. Gen., Bismarck, for defendant and appellant State Highway Com'r; on brief.

VANDE WALLE, Justice.

The State Highway Commissioner appealed from a judgment of the district court of McKenzie County reversing the Commissioner's administrative decision to revoke Robert Pladson's driver's privileges. We reverse.

During the evening of June 9, 1984, Highway Patrolman Carl Schobinger observed Pladson driving a motor vehicle in an unusual manner upon a public highway. Patrolman Schobinger testified at the administrative hearing on suspension of Pladson's driving privileges that his radar unit indicated Pladson was traveling at 59 miles per hour. Patrolman Schobinger testified further that he observed Pladson drive onto the gravel of the right shoulder with both front wheels and then drive back into the right lane. Pladson drove onto the shoulder a second time, and then drove toward the centerline. When Patrolman Schobinger subsequently stopped Pladson, he noticed that Pladson had an odor of

alcoholic beverages on his breath and that his eyes were red. Patrolman Schobinger administered an "alert" test to Pladson. When Pladson failed the "alert" test, Patrolman Schobinger placed Pladson under arrest for driving while under the influence of alcohol [hereinafter D.U.I.]. Patrolman Schobinger read the implied-consent advisory to Pladson but he did not give *Miranda* warnings to Pladson. Pladson consented to a Breathalyzer test administered by Deputy Sheriff Charles Nelson. The test resulted in a .10 percent blood-alcohol reading.

Pursuant to Section 39–20–05, N.D.C.C., Pladson requested an administrative hearing. At this hearing no prosecutor was present, and Patrolman Schobinger and the Breathalyzer operator, Deputy Sheriff Nelson, testified in response to questions posed by the administrative hearing officer and by counsel for Pladson. Pladson was present at the hearing but he did not testify.

Counsel for Pladson twice made objection at the administrative hearing that the State's Attorney or other prosecutor was not present to question the law-enforcement officers and that the hearing officer apparently was conducting an adversary proceeding.

The hearing officer conducted the examination of the law-enforcement officers present to obtain information relating to the four issues set forth in Section 39–20–05(2), N.D.C.C.[1] The hearing officer also introduced certain records of the Highway Commissioner and records obtained from the clerk of the district court relating to Breathalyzer tests.

During the administrative hearing Deputy Sheriff Nelson testified concerning the procedures he followed in administering the Breathalyzer test to Pladson. Nelson's

---

1. Subsection 2 of Section 39–20–05, N.D.C.C., provides, in part:

"2. ... The hearing must be recorded and its scope may cover only the issues of whether [1] the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of 39–08–01 or equivalent ordinance; [2] whether the person was placed under arrest; [3] whether the person was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and [4] whether, based on a review of the test procedures and results, the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight...."

testimony indicated that he was a certified operator, that the machine he used was certified by the State Toxicologist, that he used the approved check-list, the approved standard solution and the approved ampoule, and that he checked each of the 24 boxes in the approved check-list in performing the Breathalyzer test. On cross-examination, Nelson testified that he was not responsible for changing the standard solution used in the Breathalyzer test machine. Nelson also stated that he could not vouch for the changing process of the standard solution nor whether it was performed properly. He testified further that when he ran the test he interpreted the machine to be operating properly on the basis of his previous training in its use.

After presentation of evidence by both sides, the administrative hearing officer made the following conclusions of law: (1) Patrolman Schobinger had reasonable grounds to believe that Pladson had been driving in violation of Section 39–08–01, N.D.C.C.; (2) Deputy Sheriff Nelson administered the Breathalyzer test to Pladson in accordance with Section 39–20–01, N.D.C.C.; and (3) Pladson had a blood-alcohol concentration of at least .10 percent by weight. Pladson subsequently appealed to the district court in accordance with Section 39–20–06, N.D.C.C.

The district court, in reviewing the hearing officer's decision under the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., determined that the findings of fact made by the hearing officer were not supported by a preponderance of the evidence and the court therefore reinstated Pladson's driving privileges.

The court first reasoned that the procedures employed by the hearing officer did not afford Pladson a fair hearing because during the hearing the officer acted in both a judicial and a prosecutorial role. The court believed that this dual role created an appearance of impropriety and that there was a conflict of interest. The court indicated that each side should be represented by counsel.

With respect to the Breathalyzer test results, the district court noted that with Pladson's .10 blood-alcohol reading, a slight variance in the accuracy of the machine could have placed the test results below the .10 blood-alcohol reading for presumption of D.U.I. It was the court's position that the Breathalyzer test may not have been fairly administered since there was no clear showing that the standard solution used to clear the Breathalyzer machine was fresh, if it needed to be, to administer the test. Therefore, the court concluded, the administrative hearing officer's finding that Pladson's blood-alcohol content was at .10 percent was not supported by a preponderance of the evidence.

Finally, the court emphasized that the patrolman failed to advise Pladson of his *Miranda* rights at the time of arrest.

■ The State Highway Commissioner contends on appeal that the district court erred in reversing the Agency's decision and requests this court to reverse the district court's decision.[2]

■ This appeal is governed by the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., and our function on appeal is well established. We review the decision of the administrative agency, not the findings of the district court. Our review is limited and involves a three-step process: (1) whether or not the findings of fact are supported by a preponderance of the evidence; (2) whether or not the conclusions of law are sustained by the findings of fact; and (3) whether or not the agency decision is supported by the conclusions of law. See, e.g., *Dodds v. North Dakota State Highway Com'r*, 354 N.W.2d 165 (N.D.1984); *Hammeren v. North Da-*

---

**2.** We note that Pladson did not file a brief or appear before this court at oral argument or inform this court of the reasons for his failure to do so. There is no penalty under the North Dakota Rules of Appellate Procedure for the appellee's failure to file a brief except for the loss of an opportunity to be heard at oral argument. See Rule 31(c), N.D.R.App.P. But we condemn such failure. See *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982), fn. 1.

kota State Highway Com'r, 315 N.W.2d 679 (N.D.1982); Asbridge v. North Dakota State Highway Com'r, 291 N.W.2d 739 (N.D.1980).

■ In considering the first issue of whether or not the administrative hearing granted Pladson met due-process requirements, we initially note that proceedings pursuant to our Implied Consent statute, Chapter 39–20, N.D.C.C., are civil in nature and are separate and distinct from criminal proceedings which may arise from the arrest of a D.U.I. defendant. We stated in Ashbridge, supra, 291 N.W.2d at 750:

"[T]he Implied Consent Act provides for civil administrative proceedings in appropriate instances. These proceedings are separate and distinct from the criminal proceedings which may ensue from the arrest of an offending motorist. A dismissal or acquittal of the related criminal charge is irrelevant to the disposition of the revocation proceedings."

The rights that the licensee may assert in a criminal proceeding are not applicable in implied-consent hearings under Chapter 39–20, N.D.C.C. See Borman v. Tschida, 171 N.W.2d 757 (N.D.1969). The administrative hearing is designed solely to resolve the issues set forth in Section 39–20–05, N.D.C.C.

In the case of In re Township 143 North, Range 55 West, Cass County, 183 N.W.2d 520, 534 (N.D.1971), this court held:

"To constitute an unfair, arbitrary or discriminatory hearing before an administrative agency, the defect or practice complained of must be such as might lead to a denial of justice or there must be an absence of one of the elements deemed essential to due process of law."

In State v. Sinner, 207 N.W.2d 495 (N.D. 1973), the petitioner asserted that the post-suspension hearing did not comply with the requirements of due process because the functions of judge, prosecutor, and jury were embodied in the Highway Commissioner or his agent. This court, in finding the petitioner's argument meritless, stated in ¶ 7 of the Syllabus by the Court, 207 N.W.2d at 497:

"7. Though administrative agency members must be zealous in the recognition and preservation of the right to a hearing by impartial triers of the facts, the combination of the prosecuting and judicial functions has not been held to violate constitutional right or deny due process of law."

See Borman, supra. See also 1 Am. Jur.2d, Administrative Law, § 78, p. 873.

In Martin v. Super. Ct. In & For Cty. of Maricopa, 135 Ariz. 258, 660 P.2d 859 (1983), the Supreme Court of Arizona was presented with a case involving procedures similar to the case at bar. In reaching its decision that the combination of adjudicative and prosecutorial functions does not violate due process or equal protection, the court stated:

"... There is nothing prejudicial about a hearing officer handling a non-criminal license-suspension hearing without a prosecutor present to move the case forward. Given the limited scope of the hearing, the adequacy of judicial review and the presence of the respondent's counsel, this combination of adjudicative and prosecutorial functions does not violate due process or equal protection." 135 Ariz. at 261, 660 P.2d at 862.

■ Considering the limited scope of the administrative hearing, the adequacy of judicial review under Section 39–20–06, N.D. C.C., and the presence of Pladson's counsel at the hearing, we conclude that the combination of adjudicative and prosecutorial functions in the hearing officer does not violate due process. Pladson received a fair and impartial hearing.

■ The State Highway Commissioner contends, secondly, that the testimony and certified records presented at the administrative hearing proved by a preponderance of the evidence that the Breathalyzer test was fairly administered. The Commissioner argues that Section 39–20–07(7), N.D. C.C., and our decision in State v. Schneider, 270 N.W.2d 787 (N.D.1978), provide that certified copies of the records of the State Toxicologist approving the methods and de-

vices for chemical tests must be admitted as prima facie evidence of the matters stated therein. The Commissioner contends that if a driver wishes to discredit the prima facie fairness and accuracy of a test, it is his burden to then produce evidence that the test was not fairly or adequately administered. The Commissioner points out that Pladson offered no evidence concerning how the standard solution might lose some of its properties over time and whether the standard solution had indeed become "stale."

Section 39–20–07(5), N.D.C.C., provides that at a license-suspension hearing evidence of the amount of alcohol in the driver's blood

"must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis ..."

In *Schneider, supra,* we explained the foundational requirements necessary to prove that a Breathalyzer test was "fairly administered." We said that the State Toxicologist could testify concerning the administration of the test or in his absence "fair administration" could be shown by the introduction of certified copies of records filed by the State Toxicologist with the clerk of the district court relating to the approval of devices and methods, and the certification of test operators. See Section 39–20–07(5), N.D.C.C. See also *State v. Guthmiller,* 350 N.W.2d 600 (N.D.1984); *State v. Puhr,* 316 N.W.2d 75 (N.D.1982).

In *State v. Salhus,* 220 N.W.2d 852, 854 (N.D.1974), we stated in ¶ 7 of the Syllabus by the Court:

"7. A showing that a Breathalyzer test was 'fairly administered,' as required by N.D.C.C. 39–20–07, is founda-

tional for admissibility of results and full proof that the device was in proper working order, that the chemicals used were proper and properly compounded, that the operator was qualified, and that the test was given correctly [is] required in order to show fair administration of test."

In *Salhus* the only evidence offered as foundation for admission of the purported "known solution" was the Breathalyzer operator's hearsay testimony. We noted that in *State v. Miller,* 146 N.W.2d 159 (N.D. 1966), the foundation evidence concerning ampoules used in the Breathalyzer testing process was supplied by the State Toxicologist, who had supervised the spot-checking of the ampoules. We concluded in *Salhus* that the test operator's testimony, coupled with the total lack of foundation regarding the integrity of the "known solution," fell far short of the foundational requirement for admissibility of the chemical test.

In *State v. Ghylin,* 248 N.W.2d 825 (N.D. 1976), we determined that the evidence presented by the Commissioner was sufficient to establish that the standard solution used in a Breathalyzer test was what it was purported to be at the time of the test.

The Minnesota Supreme Court in *State, Dept. of Public Safety v. Habisch,* 313 N.W.2d 13 (Minn.1981), reviewed a license-revocation hearing under the implied-consent law and determined that, although the known solution used in the Breathalyzer test was 62 days old and the normal procedure used by the Bureau of Criminal Apprehension (hereinafter B.C.A.) was to change the solution every 30 days, the State had established sufficient foundation to justify admission of the test results. In *Habisch* evidence was presented establishing that the Breathalyzer test operator had complied with the approved operator's checklist in administering the test. The operator had completed the following steps in sequence: prepared the machine; purged the machine; tested the machine on room air; analyzed the subject's breath; and conducted the simulator test. The test operator's testimony along with the test

printout evidence indicated that the room air reading was .00, that defendant's breath reading was .16, and that the simulator solution reading was .11, its assigned value by the B.C.A.

The court in *Habisch, supra,* 313 N.W.2d at 16, commented on whether the testing method used was valid and reliable:

"... If [the] two separate tests [room air test and simulator solution test] give expected results, 'This would seem to be almost incontrovertible proof not only that the chemicals are proper but that the instrument is in working order.' ...

"The record does not establish how long the simulator solution retains its original alcohol concentration, except that it does lose some of its properties over a period of time. This apparently explains the need for periodically replacing the solution, because if the solution's alcohol concentration changes, that change will be reflected in the test reading. This does not mean that the alcohol content of the solution changes rapidly or that the solution cannot be used after 30 days have expired. Indeed, in this case if the alcohol concentration of the solution had changed, the log book of the Breathalyzer would not show a chain of consistent readings of .11 every time the solution was used to test the machine and the chemicals used in the machine, particularly where new ampoules are used each time the Breathalyzer machine is used. Such a chain of identical readings under those circumstances can not be the product of chance."

The *Habisch* court concluded that the State had established sufficient foundation to support the admissibility of the test results. The court agreed that the defendant had the opportunity to present testimony tending to indicate that the simulator solution had lost some of its properties and therefore no longer was a valid indicator as to the accuracy of the Breathalyzer machine. Because the defendant failed to present evidence of such a nature, the *Habisch* court was satisfied that the State had proven by a preponderance of the evidence

that the testing method was valid and reliable.

In the case at bar, the Commissioner produced in evidence a certified copy of the "Standard Solution Analytical Report," wherein the State Toxicologist certified solution No. 261 as being an approved standard solution for testing if it produced a reading in the range of 0.100 percent to 0.119 percent during the standard solution test phase. The Commissioner also produced a certified copy of the "Breathalyzer Operational Check List" used by Nelson in administering the breath test, which document shows that standard solution No. 261 was used and the standard test reading was .11. We conclude that the evidence presented by the Commissioner clearly demonstrates that the standard solution used during the Breathalyzer test was adequate for producing accurate and valid test results.

We hold that after the Commissioner introduced the certified copies relating to the administration of the test, the fairness and accuracy of the test was prima facie shown. If Pladson wished to discredit the test results with evidence that the standard solution was stale, it was his responsibility to produce such evidence at that time. Because Pladson failed to offer any evidence concerning the need for freshness of the standard solution or how time could affect the solution or its accuracy, Pladson cannot now complain that the test was somehow inaccurately or unfairly administered. The Commissioner complied with the requirements of the statute and Pladson offered no rebutting evidence.

The district court additionally based its decision to reinstate Pladson's driving privileges on the fact that Pladson had not been informed of his *Miranda* rights upon arrest and prior to taking the Breathalyzer test.

In *State v. Fields,* 294 N.W.2d 404 (N.D. 1980), we stated that the Fifth Amendment privilege against self-incrimination does not apply to implied-consent matters and, furthermore, that if a driver consents to a

blood-alcohol test, the results are not "testimonial" and are admissible into evidence.[3] See *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) [the results of a blood test are "physical" or "real" evidence, unprotected by the Fifth Amendment privilege]. See also *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *State v. Mertz,* 362 N.W.2d 410 (N.D.1985); *State v. Kimball,* 361 N.W.2d 601 (N.D.1985).

Because no "testimony" by Pladson was admitted into evidence the trial court's position on the consequences of the failure to inform Pladson of his *Miranda* rights was erroneous.

We conclude that the Commissioner's findings of fact are supported by a preponderance of the evidence; that the conclusions of law are sustained by those findings; and that the Commissioner's decision is supported by the conclusions of law.

The judgment of the district court which reversed the Commissioner's decision is reversed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

**3.** The trial court cited *State v. Fields,* 294 N.W.2d 404 (N.D.1980), in support of its holding concerning the *Miranda* warnings. In *Fields* we suppressed certain statements made by the defendant after his arrest and prior to his being fully informed of his rights. *Fields* did not involve the suppression of the chemical test results for failure to give the *Miranda* warnings. Because an arrested person does not have the constitutional right to remain silent when asked to submit to the blood-alcohol test, we recommended in *Fields* that in order to avoid confusion if the *Miranda* warnings are given prior to asking the person to take the test, the officer should inform the person that if he refuses to take the test, whether by slence or negative answer, his license is subject to suspension. See also *Hammeren v. North Dakota State Highway Com'r,* 315 N.W.2d 679 (N.D.1982).