Dan Lane WALTER, Petitioner
and Appellant,

v.

NORTH DAKOTA STATE HIGHWAY
COMMISSIONER, Respondent
and Appellee.

Civ. No. 11158.

Supreme Court of North Dakota.

July 16, 1986.

Harms & Leier, Williston, for petitioner and appellant; argued by Robert W. Harms.

Robert E. Lane, Asst. Atty. Gen., North Dakota State Highway Dept., Bismarck, for respondent and appellee.

ERICKSTAD, Chief Justice.

Dan Walter appeals from a district court judgment which affirmed a decision of Thomas W. Nielsen, a hearing officer representing the North Dakota State Highway Commissioner, suspending Walter's driver's license for a period of 420 days. We affirm.

Walter, a North Dakota resident, was convicted in North Dakota of being in actual physical control [of a vehicle] under the influence of alcohol in June of 1982. On October 26, 1984, Walter was convicted in Montana of the offense of "Operation of a Motor Vehicle ... with Alcohol Concentration of 0.10 or more (first offense)" in violation of Section 61–8–406, M.C.A.[1] Walter asserts that this conviction was a result of a guilty plea and that a condition of the plea was that Walter would be sentenced as a first offender.

As a result of the Montana conviction, Walter was assessed a fine in the amount of $400, received a suspended 10–day jail sentence, and had his driving privileges suspended for a period of six months, the suspension lasting until April 25, 1985. The order of suspension sent to Walter from the Motor Vehicle Division of the State of Montana indicated that a copy of the citation had been forwarded to North Dakota.

On February 26, 1985, the North Dakota State Highway Department sent Walter a notice informing him that his driving privileges in North Dakota would be suspended for a period of 420 days because of the alcohol related conviction in Montana which resulted in an assessment of 63 points for a total accumulation of 71 points on his driver's license record. Walter requested a hearing on the matter which was subsequently held on August 27, 1985, before a hearing officer representing the North Dakota State Highway Commissioner. The hearing officer issued a decision on September 26, 1985, making the following findings of fact and conclusions of law:

"THE PETITIONER'S DRIVING RECORD WAS REVIEWED AND FOUND TO BE CORRECT. SECTION 39–06–27, N.D.C.C. APPLIES.

"THEREFORE: IT IS HEREBY DETERMINED THAT THE DRIVER'S LI-

---

1. Section 61–8–406 of Montana Code Annotated, in effect at the time of Walter's Montana conviction, provided:

 "*Operation of motor vehicle by a person with alcohol concentration of 0.10 or more.* It is unlawful and punishable as provided in 61–8–722 for any person to drive or be in actual physical control of a motor vehicle upon the ways of this state open to the public while the alcohol concentration in his blood, breath, or urine is 0.10 or .nore."

 The following statutes are also relevant:

 "*61–8–407. Definition of alcohol concentration.* For purposes of 61–8–401 and 61–8–406, 'alcohol concentration' means either grams of alcohol per 100 milliliters of blood, grams of alcohol per 210 liters of breath, or grams of alcohol per 75.3 milliliters of urine." Section 61–8–407, M.C.A.

 "*39–20–07. Interpretation of chemical tests.* Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a mo-

 tor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible. For the purpose of this section:

 \* \* \* \* \* \*

 "4. Percent by weight of alcohol in the blood or blood alcohol concentration is based upon grams of alcohol per one hundred cubic centimeters of blood or grams of alcohol per two hundred ten liters of alveolar air or grams of alcohol per sixty-seven cubic centimeters of urine." Section 39–20–07, N.D.C.C.

 Section 39–20–07, N.D.C.C., as quoted above, includes amendments made by the 1985 Legislative Assembly which took effect subsequent to Walter's notification but prior to his hearing concerning the revocation of his driving privileges. The amendments are not relevant to the instant case.

CENSE OF THE PETITIONER SHALL BE SUSPENDED FOR 420 DAYS...."

Upon appeal to the district court, the decision of the hearing officer was affirmed and judgment was entered on November 21, 1985.

Walter now appeals to our Court asserting that the hearing officer failed to establish that Walter was convicted of a criminal offense in Montana "which is equivalent" to one of the offenses listed in Section 39–06.1–05, N.D.C.C., as required by Section 39–06–27, N.D.C.C., and questions "[w]hether the Montana statutes under which Walter was convicted constitute an 'equivalent ordinance,' as required by N.D. C.C. 39–06–27, 39–06.1–05, and 39–08–01." [2]

Walter argues in essence that the hearing officer could not have established that Walter was convicted of a criminal offense "which is equivalent" to Section 39–08–01 which is referred to in 39–06.1–05, subsection 1, because the Montana statute, under which Walter was convicted, was not received in evidence at the hearing. The record of the administrative hearing includes: testimony from Walter and argu-

ments of his counsel, a copy of the Montana order of suspension, a copy of the Montana complaint alleging that Walter had violated Montana Code, Section 61–8–406, and stating that Walter "did wrongfully operating [sic] motor vehicle with BAC of 0.10 or greater," a copy of the final disposition of the case indicating the penalty imposed in Montana, and a copy of Walter's driving record abstract from the North Dakota Drivers License Division. A copy of Section 61–8–406, M.C.A., the Montana statute of which Walter was convicted, was not received in evidence during the hearing before the hearing officer.

 We note at the outset that the findings of fact and conclusions of law made by the hearing officer are quite sparse and thus are not examples to be followed for compliance with the Administrative Agencies Practice Act, Section 28–32–13, N.D. C.C.[3] They are nonetheless adequate, as "we are able to understand the factual basis upon which the trial court reached its conclusions." *Matter of Boschee*, 347 N.W.2d 331, 336 (N.D.1984). *See also,*

---

**2.** The relevant parts of our North Dakota statutes referred to by Walter provide:

"*39–06–27. Suspending licenses upon conviction, suspension, or revocation in another state.* The commissioner may suspend or revoke the license of any resident of this state or the privilege of a nonresident to drive a motor vehicle in this state upon receiving notice of the conviction of such person in another state of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of an operator. This section shall not be construed as authorizing the assessment of points against a resident driver's record in accordance with chapter 39–06.1, except upon conviction of a resident driver for a criminal offense in another state *which is equivalent* to one of those offenses defined in section 39–06.1–05." [Emphasis added.]

"*39–06.1–05. Offenses excepted.* The procedures authorized under sections 39–06.1–02 and 39–06.1–03 may not be utilized by a person charged with one of the following offenses:

1. Driving or being in actual physical control of a vehicle in violation of section 39–08–01, or an *equivalent ordinance.*" [Emphasis added.]

"*39–08–01. Persons under the influence of intoxicating liquor or controlled substances not to operate vehicle—Penalty.*

"1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. That person has a blood alcohol concentration of at least ten onehundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

* * * * * *

"2. A person may not be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. That person has a blood alcohol concentration of at least ten onehundredths of one percent by weight at the time of the performance of a chemical test within two hours after being in physical control of a vehicle."

**3.** Section 28–32–13, N.D.C.C., requires an administrative agency to "make and state concisely and explicitly its findings of fact and its separate conclusions of law, and the decision of the agency based upon such findings and conclusions."

*Schadler v. Job Service North Dakota,* 361 N.W.2d 254, 258 (N.D.1985).

The fact that the Montana statute was not made a part of the official record does not compel the conclusion that the hearing officer did not review the statute before making his decision. It may be a good practice to receive applicable foreign statutes in evidence at an administrative hearing but we know of no rule or statute that specifically requires that be done, and we have been referred to no such rule or statute.[4] In any case, we should not presume that the hearing officer did not review an applicable state statute simply because that statute was not formally submitted and received in evidence or requested to be officially noticed.[5]

The absence of a specific reference to the Montana statute in the hearing officer's decision can be explained by the fact that Walter did not raise the issue of equivalency during the hearing.[6] The main argument made by Walter's counsel before the hearing officer was that as Montana treated his Montana conviction as a first offense it was a violation of substantive due process for North Dakota to treat that conviction as a second offense. That argument has not been made on appeal to this Court.

While we cannot compliment the hearing officer for his sparse findings, we should

---

4. *"Foreign laws—Those judicially noted—How court familiarized with—Reviewable.—* Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States. Such court may inform itself of the laws in such manner as it may deem proper and may call upon counsel to aid it in obtaining such information. The determination of such laws shall be made by the court and not by the jury and shall be reviewable." Section 31–10–03, N.D.C.C.

 *"Evidence of foreign laws admissible—Notice to adverse party of reliance on foreign laws.—* Any party may also present to the trial court any admissible evidence of the laws in another jurisdiction, but, to enable a party to offer evidence of such laws or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise." Section 31–10–04, N.D.C.C.

 *"Foreign laws not judicially noted constitute issue for court.—* The law of a jurisdiction other than those jurisdictions referred to in section 31–10–03 shall be an issue for the court, but shall not be subject to the provisions concerning judicial notice contained in such section." Section 31–10–05, N.D.C.C.

 *"RULE 44.1 DETERMINATION OF FOREIGN LAW*

 "A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the North Dakota Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." N.D.R.Civ.P.

 Incidentally, it should be noted that a more strict procedure applies in criminal cases for determination of foreign law. *See,* Rule 26.1, N.D.R.Crim.P.

5. Rule 201, N.D.R.Ev., provides in pertinent part:

 *"JUDICIAL NOTICE OF ADJUDICATIVE FACTS*

 *"(a) Scope of Rule.* This rule governs only judicial notice of adjudicative facts.

 *"(b) Kinds of Facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

 \* \* \* \* \* \*

 *"(f) Time of Taking Notice.* Judicial notice may be taken at any stage of the proceeding.

 \* \* \* \* \* \*

 "EXPLANATORY NOTE

 \* \* \* \* \* \*

 "Under subdivision (f), judicial notice may be taken at any stage of a proceeding. This is in accord with North Dakota law and practice under which the Supreme Court has traditionally taken judicial notice of certain facts. *See, e.g., Wyldes v. Patterson,* 31 N.D. 282, 153 N.W. 630 (1915)."

6. This raises the question of whether or not this issue is properly before our Court as this issue was not raised in the administrative proceeding, especially considering that this issue was also not raised before the district court. We ordinarily do not address issues not raised in the administrative agency proceeding. *Amoco Production Co. v. N.D. Indus. Com'n.,* 307 N.W.2d 839, 849 (N.D.1981). *See also, Skjonsby Truck Line, Inc. v. Elkin,* 325 N.W.2d 271, 275 (N.D. 1982); *Gramling v. North Dakota Workmen's Comp. Bur.,* 303 N.W.2d 323, 326 (N.D.1981). For an exception not applicable to the instant case, *see, Johnson v. Elkin,* 263 N.W.2d 123, 124–27 (N.D.1978). However, in the interests of justice, we shall consider it.

not be too critical of him for not making findings concerning issues not raised. Under these circumstances, the hearing officer was not required to include in his written decision all statutes or legal authority which may have influenced his decision, especially as his decision refers to Section 39–06–27, N.D.C.C., which establishes that a conviction of an "equivalent" foreign statute can be used to assess points against a driver's license, and as the record clearly indicates the section number of the foreign state statute of which Walter was convicted.

■ For the sake of argument only, let us assume that the hearing officer did not review the applicable Montana statute before making his decision. Making this assumption leads us to Walter's next argument on this appeal, that the Montana statute, under which Walter was convicted, is not a statute "which is equivalent" as required by Section 39–06–27, N.D.C.C.[7] As this is a question of law, it is fully reviewable by this Court. *Appeal of Dickinson Nursing Center*, 353 N.W.2d 754, 757–58 (N.D.1984). Therefore, the issue which we must resolve is whether or not Section 61–8–406 and related sections of the Montana Code are "equivalent" to Section 39–08–01, N.D.C.C., and related North Dakota statutes.

Walter argues that the statutes are not equivalent because the Montana statute creates a rebuttable presumption based upon the blood alcohol level while North Dakota has a *per se* statute. In *Shinault v. Commonwealth*, 228 Va. 269, 321 S.E.2d 652 (1984), the only authority Walter cites to support his argument, the Supreme Court of Virginia addressed the issue of whether or not a DUI conviction in the state of North Carolina could be used to enhance the penalty imposed upon a person for a subsequent conviction of Virginia's DUI statute. Virginia's enhancement statute provided that a conviction under "the

laws of any other state substantially similar to the provisions" of Virginia's statutes shall be considered a prior conviction. The Virginia court concluded that because the North Carolina statute created a conclusive presumption of intoxication when a person's blood alcohol concentration was 0.10 percent or greater, when the Virginia statute "merely gives rise to a *rebuttable* presumption that the person is under the influence of alcohol," the North Carolina statute was not substantially similar to the Virginia statute.

Assuming that Walter's assertions regarding presumptions created by the North Dakota and Montana statutes are correct, the situation involved in the instant case is a reverse of that addressed by the Supreme Court of Virginia. In *Shinault*, the court was faced with a foreign state statute which made it easier to establish the guilt of an accused than did the domestic state statute. In the instant case, the foreign state statute makes it more difficult to establish the guilt of the accused. The instant case also involves a hearing before an administrative agency while *Shinault* dealt with a criminal conviction. *See, Pladson v. Hjelle*, 368 N.W.2d 508, 511 (N.D. 1985). For these reasons, we find Walter's argument unpersuasive, and *Shinault* distinguishable.

■ Walter also asserts that the statutes are not equivalent because they provide for different penalties. The penalties of an offense, however, do not affect the elements which must be established to convict a person of that offense. Accordingly, for the purposes of driving suspensions, we do not believe that the differences in penalties should be determinative of whether or not the statutes are equivalent. Incidentally, the differences in penalties are not so drastic that treating the Montana

---

7. The reference to an equivalent ordinance in Section 39–06.1–05, N.D.C.C., relates to an ordinance as distinguished from a statute, and therefore, is inapplicable to the instant case.

For a case involving proof of an ordinance *See, Keyes v. Amundson*, 391 N.W.2d 602, (N.D. 1986).

statute as equivalent would contravene the intent of the North Dakota statute.[8]

It is not a requirement of 39-06-27 that the foreign statute be identical to the North Dakota statute. Instead, the requirement is that the statutes be equivalent. Upon reviewing the Montana statute and the North Dakota statute, we believe they are equivalent. Both statutes make it unlawful for any person to drive or be in actual physical control of a motor vehicle in public areas if that person has a certain blood alcohol concentration. Had the basic elements of the offenses described in the two statutes been different, or had the penalties been substantially different we might have concluded differently. That, however, is not the situation. We also view it as important that the instant case involves an administrative agency decision as distinguished from a criminal conviction. *See, Pladson v. Hjelle*, 368 N.W.2d at 511.

Accordingly, we affirm the decision of the district court which affirmed the decision of the hearing officer acting on behalf of the Highway Commissioner.

---

8. At the time of Walter's conviction, Montana imposed the following penalty for a violation of Section 61-8-406 M.C.A.:

*"61-8-722. Penalty for driving with excessive blood alcohol concentration.* (1) A person convicted of a violation of 61-8-406 shall be punished by imprisonment for not more than 10 days and shall be punished by a fine of not less than $100 or more than $500.

"(2) On a second conviction of a violation of 61-8-406, he shall be punished by imprisonment for not less than 48 consecutive hours or more than 30 days and by a fine of not less than $300 or more than $500.

"(3) On a third or subsequent conviction of a violation of 61-8-406, he shall be punished by imprisonment for not less than 48 consecutive hours or more than 6 months and by a fine of not less than $500 or more than $1,000.

"(4) The provisions of 61-5-205(2), 61-5-208(2), and 61-11-203(2)(d) relating to revocation and suspension of driver's licenses shall apply to any conviction under 61-8-406.

"(5) In addition to the punishment provided in this section, regardless of disposition, the defendant shall complete an alcohol information course at an alcohol treatment program approved by the department of institutions, which may include alcohol or drug treatment, or both, if considered necessary by the counselor conducting the program. Each counselor providing such education or treatment shall, at the commencement of the education or treatment, notify the court that the defendant has been enrolled in a course or treatment program. If the defendant fails to attend the course or the treatment program, the counselor shall notify the court of the failure.

"(6) For the purpose of determining the number of convictions under this section, 'conviction' means a final conviction, as defined in 45-2-101, or a forfeiture of bail or collateral deposited to secure the defendant's appearance in court, which forfeiture has not been vacated. An offender is considered to have been previously convicted for the purposes of this section if less than 5 years have elapsed between the commission of the present offense and a previous conviction. If there has been no additional conviction for an offense under this section for a period of 5 years after a prior conviction hereunder, then such prior offense shall be expunged from the defendant's record."

The following penalty is imposed in North Dakota for a violation of Section 39-08-01, N.D.C.C.:

"5. A person convicted of violating this section, or an equivalent ordinance, must be sentenced in accordance with this subsection.

a. For a first offense, the sentence must include both a fine of at least two hundred fifty dollars and an order for addiction evaluation by an appropriate licensed addiction treatment program.

b. For a second offense within five years, the sentence must include at least four days' imprisonment of which forty-eight hours must be served consecutively, or ten days' community service; a fine of at least five hundred dollars; and an order for addiction evaluation by an appropriate licensed addiction treatment program.

c. For a third offense within five years, the sentence must include at least sixty days' imprisonment, of which forty-eight hours must be served consecutively; a fine of one thousand dollars, and an order for addiction evaluation by an appropriate licensed addiction treatment program.

d. For a fourth offense within seven years, the sentence must include one hundred eighty days' imprisonment, of which forty-eight hours must be served consecutively and a fine of one thousand dollars." Section 39-08-01(5), N.D.C.C.

The above quoted statute includes amendments made by the 1985 Legislative Assembly which took effect subsequent to Walter's notification but prior to his hearing concerning the revocation of his driving privileges. The amendments are not relevant to the instant case.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

I concur in the result only because the majority opinion goes far beyond what is necessary to resolve this appeal. The issues raised, and generously answered, were not raised below. It is fundamental that questions raised for the first time on appeal are not considered. Justice Cardozo once noted that courts do not weary of cautioning counsel to distinguish dictum from decision. *Smith v. Hedges*, 223 N.Y. 176, 184, 119 N.E. 396 (Cardozo, J., dissenting) (1918). I take this opportunity therefore to caution that the majority opinion is, with the exception of the decision to affirm, mere dicta, of no precedential value and, in my view, far more consideration than appellant is entitled to.