# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 222

State of North Dakota,                                                    Plaintiff and Appellee

v.

William Henry Hoehn,                                               Defendant and Appellant

No. 20180400

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Thomas R. Olson, Judge.

CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.

Opinion of the Court by Tufte, Justice.

Leah J. Viste, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]    William Hoehn appealed from a criminal judgment of conviction for conspiracy to commit kidnapping and giving false information to law enforcement. The district court found Hoehn had previously been convicted of a similar offense and sentenced him as a dangerous special offender to life in prison. On appeal, Hoehn argues the district court erred in its dangerous special offender finding, in applying a life expectancy table not authorized by statute, in failing to advise him of the maximum sentence prior to accepting his guilty plea, and in listing kidnapping rather than conspiracy to commit kidnapping on the amended judgment. We affirm the conviction, vacate the sentence, and remand for resentencing without application of the dangerous special offender statute.

I

[¶2]    Hoehn was in a relationship with Brooke Crews. Crews killed Savanna LaFontaine-Greywind by cutting open her abdomen and removing her pre-term baby. Hoehn arrived at the home he shared with Crews after Crews had killed Greywind and taken the baby. He then helped to clean up evidence of the crime, including hiding Greywind's body in a closet, wrapped in garbage bags. Hoehn also helped Crews hide the baby from Greywind's family and law enforcement. Hoehn carried the baby around in a book bag when in public.

[¶3]    Hoehn was charged with three offenses: conspiracy to commit murder, conspiracy to commit kidnapping, and false information to law enforcement. Approximately three months after Hoehn's initial appearance on these charges, the State filed a notice of intent to sentence Hoehn as a dangerous special offender. Hoehn pled guilty to conspiracy to commit kidnapping and false information to law enforcement and proceeded to trial on conspiracy to commit murder. The jury

acquitted Hoehn of conspiracy to commit murder. Hoehn now appeals both his sentence and conviction on the kidnapping charge.

II

[¶4]    An offender who qualifies as a "dangerous special offender" may be given an extended sentence. N.D.C.C. § 12.1-32-09(1). "This court reviews [dangerous special] offender proceedings and the district court's application of a sentencing enhancement under N.D.C.C. § 12.1-32-09 for an abuse of discretion." *State v. Lyon*, 2019 ND 21, ¶ 5, 921 N.W.2d 441; *State v. Clark*, 2012 ND 135, ¶ 18, 818 N.W.2d 739. "A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *State v. Cain*, 2011 ND 213, ¶ 16, 806 N.W.2d 597.

[¶5]    To find Hoehn to be a dangerous special offender and extend his sentence, N.D.C.C. § 12.1-32-09(1)(d) requires a finding that (1) he "was convicted of an offense that seriously endangered the life of another person" and (2) he "had previously been convicted of a similar offense." The jury, or the court if a jury is waived, must conduct a hearing to determine beyond a reasonable doubt whether an offender is a dangerous special offender. N.D.C.C. § 12.1-32-09(4). Hoehn waived his right to a jury trial on the dangerous special offender elements. Applying N.D.C.C. § 12.1-32-09(1)(d), the district court found beyond a reasonable doubt that Hoehn is a dangerous special offender because, by his guilty plea to conspiracy to commit kidnapping, he had been "convicted of an offense that seriously endangered the life of another person" and he had "been convicted of a similar offense," a 2012 conviction for child abuse.

[¶6]    To prove Hoehn "had previously been convicted of a similar offense" under N.D.C.C. § 12.1-32-09(1)(d), the State offered a 2012 conviction for abuse or neglect of a child. Hoehn pled guilty to the charge, which was a class B felony under N.D.C.C. § 14-09-22(1)(a) (2009). Although the term "similar offense" has been in the statutory language of N.D.C.C. § 12.1-32-09(1)(d) since it was originally enacted

2

in 1973, *see* N.D.C.C. § 12.1-32-09(1)(d) (1973) *and State v. Wells*, 276 N.W.2d 679 (N.D. 1979), neither the Century Code nor our cases have defined or explained the term. Here, the district court did not explain why it found Hoehn's kidnapping offense to be similar to his 2012 conviction for child abuse.

[¶7]    When used as an adjective, "similar" is defined as "1: having characteristics in common: [being] very much alike . . . [or] 2: alike in substance or essentials." *Webster's Third New International Dictionary* 2120 (16th ed. 1971). When defined as a noun subject, "similar" is defined as "one that resembles another." *Id*. As an adjective, "equivalent" is defined as "like in signification or import . . . corresponding or virtually identical esp[ecially] in effect or function." *Webster's Third New International Dictionary* 769 (16th ed. 1971). As a noun subject, "equivalent" is defined as "one that is equivalent (as in value, meaning, or effect)." *Id*. These definitions indicate that two things that are "equivalent" have more characteristics in common than two things that are "similar." The difference is one of degree. The resemblance need not be as strong for two offenses to be similar as for two offenses to be equivalent. We have examined what constitutes an offense "equivalent" to a North Dakota offense of driving under the influence, *Walter v. North Dakota State Highway Comm'r*, 391 N.W.2d 155 (N.D. 1986), and to North Dakota offenses requiring registration as a sex offender, *Denault v. State*, 2017 ND 167, 898 N.W.2d 452. We consider cases discussing "equivalent" offenses by analogy to help inform our analysis here of what are "similar offenses."

[¶8]    To be equivalent offenses, the statutes do not need to be identical. *Id.* at ¶ 19 (quoting *Walter*, 391 N.W.2d at 160). As we do when considering whether offenses are equivalent, to determine whether two offenses are similar, we examine both the elements of the two statutes and, if necessary, also the facts underlying each conviction. Because similar assaultive conduct may for a variety of reasons result in charges for disorderly conduct, simple assault, aggravated assault, or attempted murder, a simple comparison of statutes may be insufficient to determine whether two offenses are similar.

3

A

[¶9]    In 2011, Hoehn was charged with the crime of abuse or neglect of a child in violation of N.D.C.C. § 14-09-22(1)(a) (2009) ("child abuse statute"):

> [A] parent adult family or household member, guardian, or other custodian of any child, who willfully commits any of the following offenses [and] the victim of an offense under subdivision a is under the age of six years [is guilty of] a class B felony:
> a. Inflicts, or allows to be inflicted, upon the child, bodily injury, substantial bodily injury, or serious bodily injury as defined by section 12.1-01-04 or mental injury.

The statute defining the kidnapping offense at issue here states:

> A person is guilty of kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:
> . . . .
> f. Interfere with the performance of any governmental or political function.

N.D.C.C. § 12.1-18-01(1). Kidnapping is a class A felony. N.D.C.C. § 12.1-18-01(2).

[¶10]   We begin by comparing the elements of the two statutes. The child abuse statute requires a culpability of "willfully." Conspiracy to commit kidnapping requires a culpability of "intentional." Culpability of "willfully" is a lower standard than "intentionally." Where the prior offense has an equal or higher culpability requirement, it may be similar. Where the prior offense has a lower culpability requirement, it is less similar. *See Walter*, 391 N.W.2d at 159.

[¶11]   In *Walter*, this court distinguished *Shinault v. Commonwealth*, 321 S.E.2d 652 (Va. 1984), which examined a North Carolina DUI statute to determine whether it was "substantially similar" to a Virginia offense and thus counted as a prior enhancing offense. *Walter*, 391 N.W.2d at 159. The Virginia Supreme Court rejected the argument that a North Carolina statute was substantially similar because it was easier to establish guilt under the *per se* North Carolina statute compared with the Virginia statute providing only a rebuttable presumption of guilt upon evidence of a given alcohol concentration. *Shinault*, 321 S.E.2d at 654. In *Walter*, this Court reasoned that it was faced with a prior offense under a statute making it more difficult to

4

convict—the reverse of the situation presented in *Shinault*. *Walter*, 391 N.W.2d at 159. In *Walter*, we concluded the Montana DUI statute was "equivalent" because the Montana "statute makes it more difficult to establish the guilt of the accused" and despite differences in the penalties. *Id.*

[¶12] The child abuse statute requires that the defendant must have inflicted harm on the victim and must have caused some form of injury. The child abuse statute also requires that the victim be a child. The kidnapping statute requires none of these elements. The kidnapping statute requires an abduction and an interference with a governmental or political function. The child abuse statute requires neither of these. Both the child abuse and kidnapping offenses were charged as a felony. "The penalties of an offense, however, do not affect the elements which must be established to convict a person of that offense." *Walter*, 391 N.W.2d at 159; *but see Denault*, 2017 ND 167, ¶ 19, 898 N.W.2d 452 (quoting *Walter*, at 160) (suggesting that a substantial difference in the authorized penalties may lead to a conclusion that the offenses are not similar).

[¶13] We conclude that a comparison of the statutory elements does not support a finding that a child abuse offense is similar to a kidnapping offense.

B

[¶14] An offense has statutory elements, but it is defined as conduct: "'Offense' means conduct for which a term of imprisonment or a fine is authorized by statute after conviction." N.D.C.C. § 12.1-01-04(19). Because there is often a range of discretion a prosecutor has in selecting what statutory offense to charge based on alleged criminal conduct, our inquiry does not end with consideration of the elements of the two offenses. Despite different charges, a close correspondence in underlying conduct may support a finding that the prior conviction was for a similar offense. *See Denault*, 2017 ND 167, ¶ 20, 898 N.W.2d 452 (quoting *State v. Lloyd*, 970 N.E.2d 870, 877 (Ohio 2012) (in considering whether offenses are "substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the

5

record . . . including charging documents, plea agreements, [and] transcripts of plea colloquies . . . .")).

[¶15] Here, there is little similarity in the underlying conduct of the kidnapping offense and the previous child abuse offense. In the child abuse offense, Hoehn injured his infant son by putting him down on a changing table hard enough to cause skull fractures. The conduct underlying the kidnapping charge included hiding the baby in a book bag and aiding Crews in deceiving law enforcement and the baby's family about where it was. The doctor who examined the baby after it was discovered testified that the child was "somewhere between 34 and 36 weeks gestation. . . . preterm and about 7 days old, 4 pounds, and generally very well appearing, and a healthy appearing baby." The doctor did note the child had an "unusual kind of rash behind [its] ears, but no significant pathological injuries." In short, the baby was physically healthy. In the prior child abuse offense, Hoehn's actions resulted in serious physical injury. Although Hoehn failed to seek medical attention for the Greywind baby after a traumatic preterm birth, Hoehn's conduct did not cause physical injury to the baby. The underlying conduct of the two offenses is not similar.

[¶16] Because Hoehn's previous child abuse offense is not a similar offense in terms of its elements or its underlying conduct, we conclude the district court abused its discretion by misapplying or misinterpreting the law when it sentenced Hoehn for conspiracy to commit kidnapping as a dangerous special offender.

III

[¶17] Hoehn also argues the district court violated N.D.R.Crim.P. 11 by not informing him of the maximum possible penalty or any mandatory minimum penalties.

[¶18] A guilty plea "must be entered knowingly, intelligently, and voluntarily to be valid." *Peltier v. State*, 2015 ND 35, ¶ 14, 859 N.W.2d 381. Rule 11, N.D.R.Crim.P., gives courts a framework to determine whether a plea is entered into knowingly, intelligently, and voluntarily. *State v. Wallace*, 2018 ND 225, ¶ 6, 918 N.W.2d 64;

6

*State v. Blurton*, 2009 ND 144, ¶ 10, 770 N.W.2d 231. Under N.D.R.Crim.P. 11(b)(1), "the court is required to address the defendant personally in open court, informing the defendant of his rights and determining whether the defendant understands those rights." *State v. Pixler*, 2010 ND 105, ¶ 8, 783 N.W.2d 9. Rule 11(b)(1) states in pertinent part:

> The court may not accept a plea of guilty without first, by addressing the defendant personally . . . in open court, informing the defendant of and determining that the defendant understands the following:
>
> . . . .
>
> (G) any maximum possible penalty, including imprisonment, fine, and mandatory fee; [and]
> (H) any mandatory minimum penalty.

N.D.R.Crim.P. 11(b)(1). The "requirement to advise the defendant under N.D.R.Crim.P. 11 is mandatory and binding upon the court." *Wallace*, 2018 ND 225, ¶ 7, 918 N.W.2d 64. We have explained that Rule 11 "does not require 'ritualistic compliance'; however, a court must 'substantially comply with the rule's procedural requirements' to ensure a defendant is entering a voluntary and intelligent guilty plea." *Id.*; *State v. Murphy*, 2014 ND 202, ¶ 7, 855 N.W.2d 647. The purpose of the Rule 11(b) requirements "is to ensure the defendant is aware of the consequences of his guilty plea." *Murphy*, at ¶ 11.

[¶19] At Hoehn's initial appearance he was informed that the conspiracy to commit kidnapping charge is a class A felony punishable by up to twenty years in prison and a $20,000 fine. Approximately three months after Hoehn's initial appearance and nine months before he pled guilty to conspiracy to commit kidnapping, the State filed a notice of intent to sentence Hoehn as a dangerous special offender under N.D.C.C. § 12.1-32-09(1)(d). If a defendant is found to be a dangerous special offender, the maximum sentence for conspiracy to commit kidnapping would increase to life imprisonment. N.D.C.C. § 12.1-32-09(2)(a). Hoehn pled guilty to conspiracy to commit kidnapping at a September 2018 change of plea hearing. At no time during the hearing did the court address with Hoehn the extended maximum penalty that could result from a dangerous special offender finding. The court accepted Hoehn's

7

guilty plea to the conspiracy to commit kidnapping. Almost two months later, Hoehn was found to be a dangerous special offender and sentenced to life in prison. Approximately one week after sentencing, the North Dakota Department of Corrections sent an email requesting an amended judgment to determine Hoehn's remaining life expectancy. Hoehn and the State stipulated to a life expectancy calculation of 42 years from the day of sentencing. Conspiracy to commit kidnapping falls under N.D.C.C. § 12.1-32-09.1(1), which requires service of eighty-five percent of a prison sentence before an offender is eligible for parole. Hoehn implicitly argues this life expectancy calculation altered the time when the eighty-five percent rule would trigger and thus constitutes an undisclosed mandatory minimum. We have held district courts are not required under Rule 11 to inform defendants of the eighty-five percent rule. *State v. Magnuson*, 1997 ND 228, ¶¶ 20-21, 571 N.W.2d 642. There was no undisclosed mandatory minimum, only an undisclosed parole eligibility provision, which does not violate Rule 11. *Id.* Thus, we only review Hoehn's argument that the district court violated N.D.R.Crim.P. 11 when it failed to inform him of the extended maximum sentence allowed for dangerous special offenders.

[¶20]   Hoehn did not move to withdraw his guilty plea in the district court. He also did not object at his sentencing hearing or express any indication the sentence was higher than he was told he could receive before entering a guilty plea. "Issues not raised in the district court will not be addressed for the first time on appeal, unless the alleged error rises to the level of obvious error affecting substantial rights under N.D.R.Crim.P. 52(b)." *Murphy*, 2014 ND 202, ¶ 6, 855 N.W.2d 647; *State v. Fickert*, 2010 ND 61, ¶ 7, 780 N.W.2d 670; *State v. Vandehoven*, 2009 ND 165, ¶ 8, 772 N.W.2d 603. "Under N.D.R.Crim.P. 52, any 'error, defect, irregularity or variance that does not affect substantial rights must be disregarded.'" *Murphy*, at ¶ 6 (quoting N.D.R.Crim.P. 52(a)). "To establish obvious error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights." *Blurton*, 2009 ND 144, ¶ 8, 770 N.W.2d 231. We exercise "[o]ur power to notice obvious error . . . cautiously and

only in exceptional situations where the defendant has suffered serious injustice." *Fickert*, at ¶ 7.

A

[¶21] First, there must be an error. *Id*. "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law." *State v. Eckroth*, 2015 ND 40, ¶ 19, 858 N.W.2d 908. Although ritualistic compliance with Rule 11 is not required, substantial compliance with the procedural requirements of Rule 11 is necessary to "ensure a defendant is entering a voluntary and intelligent guilty plea." *Wallace*, 2018 ND 225, ¶ 7, 918 N.W.2d 64.

[¶22] The record shows the district court never discussed the possible maximum sentence Hoehn could receive as a dangerous special offender. "The requirement that the court personally advise and question the defendant is intended to ensure a record that will affirmatively establish a knowing and voluntary decision by the defendant." *State v. Schumacher*, 452 N.W.2d 345, 347 (N.D. 1990). The court's failure to inform Hoehn of the potential maximum penalty is an error because it conflicts with the clear mandate of N.D.R.Crim.P. 11. *See Vandehoven*, 2009 ND 165, 772 N.W.2d 603 (reversed and remanded because the district court failed to comply with Rule 11 in several ways, including failure to inform the defendant of the maximum possible penalty); *State v. Boushee*, 459 N.W.2d 552, 555-56 (N.D. 1990) (reversed and remanded where the district court failed to inform defendant of the minimum or maximum penalties until after accepting the plea); *see also Wallace*, 2018 ND 225, ¶ 10, 918 N.W.2d 64 (reversed and remanded where the record failed to show defendant was informed of mandatory minimum); *State v. Farrell*, 2000 ND 26, ¶¶ 19-21, 606 N.W.2d 524 (reversed and remanded where district court failed to advise the defendant that the court was not bound by the recommended sentence prior to accepting the guilty plea); *State v. Schweitzer*, 510 N.W.2d 612, 616 (N.D. 1994) (reversed and remanded because the record did not contain an express statement informing the defendant of the mandatory minimum); *Schumacher*, 452 N.W.2d at

9

346, 348 (reversed and remanded because the court did not advise the defendant of his mandatory minimum sentencing penalty prior to accepting his guilty plea).

B

[¶23] Hoehn must also establish that this error is plain under N.D.R.Crim.P. 52(b). *Blurton*, 2009 ND 144, ¶ 8, 770 N.W.2d 231. In addition to the plain language of Rule 11(b)(1)(G), our cases further explain this requirement. *Vandehoven*, 2009 ND 165, 772 N.W.2d 603 (reversed and remanded because the district court failed to inform defendant of maximum possible penalty); *Boushee*, 459 N.W.2d at 555-56 (reversed and remanded where the district court failed to inform defendant of the minimum or maximum penalties before accepting the plea); *cf. Blurton*, at ¶ 11 (affirming conviction despite failure to advise of maximum penalty because defendant had sent a letter to the court showing knowledge of the maximum sentence, reaffirmed his guilty plea, and stated he did not wish to withdraw his plea at sentencing). The clear language of Rule 11 as illustrated by our case law shows this error is "plain"—the court must inform the defendant of the maximum possible penalty prior to the court's accepting a guilty plea.

C

[¶24] Finally, to establish obvious error, Hoehn must show the error, which was plain, affected his substantial rights. *Blurton*, 2009 ND 144, ¶ 8, 770 N.W.2d 231. If an error does not affect the defendant's substantial rights, then it must be disregarded. N.D.R.Crim.P. 52(a).

[¶25] Because we have determined that the dangerous special offender status does not apply to Hoehn, he is subject only to the maximum penalty for conspiracy to commit kidnapping under N.D.C.C. § 12.1-18-01(f)—a class A felony with a maximum of twenty years' imprisonment and a $20,000 fine. N.D.C.C. §§ 12.1-18-01(2) and 12.1-32-01(2). At his August 2017 initial appearance, the court asked if Hoehn recalled being read his rights. Hoehn replied he remembered and understood his rights. The court also informed Hoehn of the maximum possible penalty for the conspiracy to commit kidnapping—twenty years' imprisonment and a $20,000 fine.

10

At the September 2018 change of plea hearing, the court asked if Hoehn recalled his rights and understood that by pleading guilty he was giving up those rights. Hoehn again stated he remembered his rights and understood. "At a change of plea hearing, a trial court is not required to readvise a defendant of each of his rights under N.D.R.Crim.P. 11(b), if the court determines the defendant previously was properly advised of those rights and recalls the advice." *Abdi v. State*, 2000 ND 64, ¶ 15, 608 N.W.2d 292 (citing *State v. Gunwall*, 522 N.W.2d 183, 185 (N.D. 1994)). Thus, because the dangerous special offender status was improperly applied and Hoehn was advised of the maximum penalty that did properly apply to the conspiracy to commit kidnapping charge without enhancement by dangerous special offender status, Hoehn's substantial rights were not affected. On remand for resentencing, he may be resentenced within the maximum that applies without the extended sentence, which is the maximum he had been advised of prior to entry of his guilty plea. Acceptance of the guilty plea was not obvious error under these circumstances.

### IV

[¶26]   Hoehn's arguments regarding the life expectancy calculation and its ex post facto effect are rendered moot because we have determined the district court misapplied the law in finding Hoehn was a dangerous special offender.

[¶27]   We have considered Hoehn's remaining issues and arguments and conclude they are either without merit or unnecessary to our decision.

### V

[¶28]   We affirm the conviction, vacate the sentence, and remand for resentencing without application of the dangerous special offender statute.

[¶29]   Jerod E. Tufte
       Daniel J. Crothers
       Jon J. Jensen
       Lisa Fair McEvers
       Gerald W. VandeWalle, C.J.

11