Tufte, Justice.
 

 [¶ 1] The North Dakota Department of Transportation appealed a district court judgment reversing the Department's decision to suspend Jim DeForest's driving privileges. We reverse the district court's judgment and reinstate the Department's suspension of DeForest's driving privileges for 91 days.
 

 I
 

 [¶ 2] In November 2017, Deputy Jared Lemieux stopped DeForest for exceeding the speed limit by ten miles per hour. During the stop, DeForest exhibited signs of intoxication. After conducting field sobriety tests, Lemieux arrested DeForest for driving under the influence of alcohol. Lemieux read DeForest
 
 Miranda
 
 warnings and a post-arrest implied consent advisory, omitting reference to criminal penalties for refusal of breath or urine tests. Lemieux then requested a blood test. Prior to Lemieux's advisory and request, DeForest had asked for a chemical blood test. DeForest consented to a blood test.
 

 [¶ 3] During the administrative hearing, DeForest objected to admission of the blood test result, arguing non-compliance with the required implied consent advisory procedure. The hearing officer admitted the blood test evidence over the objection and found Lemieux "read the implied consent advisory in accordance with N.D.C.C. section 39-20-01(3)(a)."
 

 [¶ 4] DeForest appealed to the district court, arguing the implied consent advisory given was incomplete and thus the blood test evidence was inadmissible. The district court concluded the hearing officer erred in admitting the blood test evidence and reinstated DeForest's driving privileges. The Department appeals.
 

 II
 

 [¶ 5] The standard of review for an administrative hearing to suspend or revoke a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32.
 
 Haynes v. Director, Dep't of Transp.
 
 ,
 
 2014 ND 161
 
 , ¶ 6,
 
 851 N.W.2d 172
 
 . When a district court's review of a department's decision is on appeal before this Court, we review the department's original decision.
 

 Id.
 

 Our review is limited and we give great deference to the agency's findings. We
 
 *46
 
 do not make independent findings of fact or substitute our judgment for that of the agency; instead, we determine whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.
 

 Id.
 

 (citations omitted). "Once the facts are established, their significance presents a question of law, which we review de novo."
 
 McCoy v. N.D. Dep't of Transp.
 
 ,
 
 2014 ND 119
 
 , ¶ 8,
 
 848 N.W.2d 659
 
 (citations and internal quotations omitted). We must affirm the agency's decision unless:
 

 1. The order is not in accordance with the law.
 

 2. The order is in violation of the constitutional rights of the appellant.
 

 3. The provisions of [chapter 28-32] have not been complied with in the proceedings before the agency.
 

 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
 

 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
 

 6. The conclusions of law and order of the agency are not supported by its findings of fact.
 

 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
 

 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.
 

 N.D.C.C. § 28-32-46.
 
 See also
 

 Haynes
 
 , at ¶ 6.
 

 III
 

 [¶ 6] The Department argues the blood test result is admissible under N.D.C.C. § 39-20-01(3). DeForest argues the test result is inadmissible under
 
 State v. O'Connor
 
 , in which this Court held that under § 39-20-01(3), a chemical test result was inadmissible because the officer did not provide a complete implied consent advisory.
 
 2016 ND 72
 
 , ¶ 8,
 
 877 N.W.2d 312
 
 . Section 39-20-01(3), N.D.C.C., was amended after
 
 O'Connor
 
 and before DeForest's arrest. As of August 2017, and at all times relevant here, it states:
 

 a. The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant.
 

 b. A test administered under this section is not admissible in any criminal or administrative proceeding to determine a violation of section 39-08-01 or this chapter if the law enforcement officer fails to inform the individual charged as required under subdivision a.
 

 N.D.C.C. § 39-20-01(3).
 

 [¶ 7] There is no dispute that Lemieux did not inform DeForest about the
 
 *47
 
 penalties for refusal of breath and urine tests. Lemieux read the advisory as follows:
 

 [A]s a condition of operating a motor vehicle on a highway, or on a public or private area, to which the public has right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs. I must inform you that North Dakota law requires you to submit to a chemical test to determine whether you are under the influence of alcohol or drugs. I must also inform you that refusal to take the test ... refusal to take the test as directed by a law enforcement officer may result in a revocation of your driver's license for a minimum of 180 days and potentially up to three years.
 

 Lemieux omitted the information in the second sentence of N.D.C.C. § 39-20-01(3)(a) : "[T]he law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence." Whether the advisory given by Lemieux satisfied the requirements of the amended statute turns on whether the third sentence qualifies the second sentence when a blood test is requested. We conclude that it does.
 

 IV
 

 [¶ 8] "Statutory interpretation is a question of law, fully reviewable on appeal."
 
 Teigen v. State
 
 ,
 
 2008 ND 88
 
 , ¶ 19,
 
 749 N.W.2d 505
 
 . "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears."
 
 Zajac v. Traill Cty. Water Res. Dist.
 
 ,
 
 2016 ND 134
 
 , ¶ 6,
 
 881 N.W.2d 666
 
 ;
 
 see also
 
 N.D.C.C. § 1-02-02. "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language."
 
 Robot Aided Mfg., Inc. v. Moore
 
 ,
 
 1999 ND 14
 
 , ¶ 12,
 
 589 N.W.2d 187
 
 (quoting N.D.C.C. § 1-02-03 ). "The primary purpose of statutory interpretation is to determine the intention of the legislation."
 
 Zajac
 
 , at ¶ 6. Our focus is on what meaning was intended by words and phrases enacted into law. "If the language of a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.' "
 
 Id.
 
 at ¶ 6 (quoting N.D.C.C. § 1-02-05 ).
 

 [¶ 9] We "construe[ ] statutes to avoid absurd or illogical results."
 
 State v. Stegall
 
 ,
 
 2013 ND 49
 
 , ¶ 16,
 
 828 N.W.2d 526
 
 (quoting
 
 Mertz v. City of Elgin
 
 ,
 
 2011 ND 148
 
 , ¶ 7,
 
 800 N.W.2d 710
 
 );
 
 see
 
 N.D.C.C. § 1-02-38(4) ("In enacting a statute, it is presumed that: ... [a] result feasible of execution is intended."). Statutes are interpreted in context.
 
 In Interest of K.G.
 
 ,
 
 551 N.W.2d 554
 
 , 556 (N.D. 1996). They are "construed as a whole and are harmonized to give meaning to related provisions."
 
 Indus. Contractors, Inc. v. Taylor
 
 ,
 
 2017 ND 183
 
 , ¶ 11,
 
 899 N.W.2d 680
 
 . Further, "[i]f an irreconcilable conflict exists, the latest enactment will ... be regarded as an exception to or as a qualification of the other."
 
 City of Bismarck v. Fettig,
 

 1999 ND 193
 
 , ¶ 18,
 
 601 N.W.2d 247
 
 ;
 
 see also
 
 N.D.C.C. § 1-02-08.
 

 [¶ 10] We interpret the implied consent advisory to give effect to each provision. The word "if" beginning the last sentence of the advisory is the introduction of a conditional clause. The most recent amendment to § 39-20-01(3)(a) added the third sentence beginning with the "if" clause while rephrasing what is now the second sentence. 2017 N.D. Sess. Laws ch. 268, § 4. To the extent there may be conflict between the two provisions, we interpret the later-added third sentence as being "an exception to or as a qualification of"
 

 *48
 
 the "shall" clause in the second sentence.
 
 Fettig
 
 ,
 
 1999 ND 193
 
 , ¶ 18,
 
 601 N.W.2d 247
 
 (citing N.D.C.C. § 1-02-07 ). The "if" clause in N.D.C.C. § 39-20-01(3)(a) includes a simple condition, "[i]f the officer requests the individual to submit to a blood test," which is followed by a specific limitation on what may be said when, "the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant." DeForest's interpretation of "shall inform" in the second sentence would almost completely read out the third sentence because there would be no way to read the entire implied consent warning, including penalties for breath test refusal, and then request a blood test consistent with the third sentence's requirement to "not inform ... of any criminal penalties." DeForest's reading would bar admission of a blood test result unless a search warrant had been secured prior to giving the implied consent advisory and requesting the blood test.
 

 [¶ 11] The phrase "any criminal penalties" in N.D.C.C. § 39-20-01(3)(a) means what it plainly says, and includes all criminal penalties, including penalties for refusal of "blood, breath, or urine" tests under N.D.C.C. § 39-08-01(1)(e)(2). It is not consistent with plain meaning to read "any criminal penalties" as implicitly referring only to criminal penalties for refusing blood tests.
 

 [¶ 12] Reading the third sentence as an exception to the mandatory warning about criminal penalties for refusing breath or urine tests furthers the statutory scheme. It is unnecessary and confusing to inform the arrestee of the penalties for refusing breath or urine tests when the officer has decided to request a blood test. "If the officer requests ... a blood test," there is no logical reason to warn about consequences for refusing tests that are not requested, and following
 
 Birchfield v. North Dakota
 
 , --- U.S. ----,
 
 136 S.Ct. 2160
 
 , 2186,
 
 195 L.Ed.2d 560
 
 (2016), the Legislative Assembly logically excepted warrantless blood tests from the warnings about criminal penalties. DeForest's interpretation would conflict with the statutory scheme by imposing a requirement that when the object is a blood test, the officer must always obtain a warrant prior to reading the implied consent advisory. It is plain that these statutes as amended in 2017 did not intend to require a breath test as a first alternative in every case and did not intend to require a search warrant prior to reading the implied consent advisory and requesting a blood test.
 

 V
 

 [¶ 13] The "if ... blood ... may not inform ... any criminal penalties" clause operates as condition to the "shall inform" clause in the second sentence. The hearing officer's determination that the Deputy's implied consent advisory satisfied N.D.C.C. § 39-20-01(3) was correct, and the blood test was properly admitted. We reverse the district court judgment and reinstate the hearing officer's decision to suspend DeForest's driving privileges.
 

 [¶ 14] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.