20200114

FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
NOVEMBER 19, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 245

Kyle Al Christianson,            Appellant

v.

Director, Department of Transportation,            Appellee

## No. 20200114

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Adam J. Justinger, Fargo, N.D., for appellant.

Michael T. Pitcher, Assistant Attorney General, Office of the Attorney General, Bismarck, N.D., for appellee.

**Tufte, Justice.**

[¶1]   Kyle Christianson appeals from a district court's judgment affirming the North Dakota Department of Transportation's suspension of his driving privileges based on his conviction in Canada for a driving under the influence offense. Christianson argues that the Department lacked jurisdiction because the Canadian statute does not define an equivalent offense and that the hearing officer failed to provide a fair and impartial hearing. We affirm the Department's suspension and disqualification of Christianson's noncommercial and commercial driving privileges.

I

[¶2]   In April of 2019, the Department issued Christianson an order of suspension for his noncommercial driver's license and an order of disqualification for his commercial driver's license based on his driving privileges having been suspended in another jurisdiction. Christianson requested an administrative hearing. At the end of the hearing, the hearing officer recommended Christianson's driving privileges be suspended. The Department adopted the recommendation and the district court affirmed. Christianson appealed that decision to this Court, and we reversed and vacated the judgment in April of 2020 because it was based on erroneously admitted evidence. *Christianson v. N.D. Dep't of Transp.*, 2020 ND 76, 941 N.W.2d 529.

[¶3]   In August of 2019, the Department issued Christianson an order of suspension for his noncommercial driver's license and order of disqualification for his commercial license (together referred to as suspension) based on his conviction for driving under the influence of alcohol in another jurisdiction. Christianson again requested an administrative hearing. At the hearing, which was held telephonically, Christianson offered and the hearing officer accepted into evidence a printout of the Canadian criminal code. Additionally, the Department sought to admit a hearing file indicating Christianson had been convicted of driving under the influence of alcohol in Canada.

Christianson objected to the hearing file, arguing it was not authentic and contained hearsay not subject to an exception. The hearing officer admitted the hearing file over Christianson's objection, concluding it was properly certified as a copy of the Department's official records.

[¶4] During oral arguments at the hearing, Christianson argued that the hearing officer should dismiss the action for failure to hold the hearing in Mountrail County, Christianson's county of residence. Christianson also argued that the Canadian statute did not define an equivalent offense, that there was no proof Christianson was afforded due process in his criminal proceedings in Canada, that Christianson's procedural due process rights were violated by the Department in this proceeding, and that the conviction was not received from a recognized foreign jurisdiction. The hearing officer found against Christianson on each argument and recommended that Christianson's non-commercial and commercial driving privileges be suspended indefinitely until he complied with all reinstatement requirements. The Department accepted the hearing officer's recommendations and the district court affirmed.

II

[¶5] Christianson argues the Canadian statute does not define an equivalent offense and therefore the Department's suspension of his driving privileges was not in accordance with the law.

[¶6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of the Department of Transportation's decision to suspend or revoke a driver's license. *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 6, 851 N.W.2d 172. We review the Department's original decision. *DeForest v. N.D. Dep't of Transp.*, 2018 ND 224, ¶ 5, 918 N.W.2d 43. We give great deference to the Department's findings of fact. *Id.* We review the Department's legal conclusions de novo. *Id.* We must affirm the Department's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of [chapter 28-32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

[¶7] "The director may suspend or revoke the operator's license of any resident of this state . . . upon receiving notice of the conviction of that individual in a tribal court or in another state of an offense, which if committed in this state would be grounds for the suspension or revocation of an operator's license of an operator." N.D.C.C. § 39-06-27(1). Whether a North Dakota statute is equivalent to a foreign state's statute is a question of law fully reviewable by this Court. *Walter v. North Dakota State Highway Comm'r*, 391 N.W.2d 155, 159 (N.D. 1986). This Court reviews questions of law de novo. *Rounkles v. Levi*, 2015 ND 128, ¶ 5, 863 N.W.2d 910.

[¶8] Under North Dakota law, "[a] person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply":

a. That person has an alcohol concentration of at least eight one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle.
b. That person is under the influence of intoxicating liquor.
c. That person is under the influence of any drug or substance or combination of drugs or substances to a degree which renders that person incapable of safely driving.

3

d. That person is under the combined influence of alcohol and any other drugs or substances to a degree which renders that person incapable of safely driving.

N.D.C.C. § 39-08-01(1)(a-d). Under Canadian law, "[e]veryone commits an offense who:

> (a) operates a conveyance while the person's ability to operate it is impaired to any degree by alcohol or a drug or by a combination of alcohol and a drug;
> (b) subject to subsection (5), has, within two hours after ceasing to operate a conveyance, a blood alcohol concentration that is equal to or exceeds 80 mg of alcohol in 100 mL of blood;
> (c) subject to subsection (6), has, within two hours after ceasing to operate a conveyance, a blood drug concentration that is equal to or exceeds the blood drug concentration for the drug that is prescribed by regulation; or
> (d) subject to subsection (7), has, within two hours after ceasing to operate a conveyance, a blood alcohol concentration and a blood drug concentration that is equal to or exceeds the blood alcohol concentration and the blood drug concentration for the drug that are prescribed by regulation for instances where alcohol and that drug are combined."

R.S.C. 1985, c. C-46, 320.14(1)(a-d).

[¶9] To support a suspension under N.D.C.C. § 39-06-27, a foreign statute need not be identical to the North Dakota statute; "the requirement is that the statutes be equivalent." *Walter v. N.D. State Highway Comm'r*, 391 N.W.2d 155, 160 (N.D. 1986). Under N.D.C.C. § 39-06.1-01(2), an "equivalent ordinance" is "an ordinance of a city, state, or other jurisdiction which is comparable to the cited statute and defines essentially the same offense, even if the language of the ordinance differs or procedural points or methods of proof differ." We consider "the basic elements of the offenses described in the two statutes" as well as the difference in the penalties in determining the equivalency of the two statutes. *See Denault v. State*, 2017 ND 167, ¶ 19, 898 N.W.2d 452 (quoting *Walter*, at 160, in analysis of "equivalent" offenses under N.D.C.C. § 12.1-32-15(3)(b)). Which statute makes it more difficult to establish

4

guilt is also relevant to determining the equivalency of the offenses. *See Walter*, at 159.

A

[¶10] Christianson first argues that the offenses are not equivalent because the level of impairment required to prove the offense is substantially different. The North Dakota statute requires that a person be "under the influence of intoxicating liquor" to be guilty of an offense. N.D.C.C. § 39-08-01(1)(b). In comparison, a person is guilty of an offense under the Canadian statute if that person's "ability to operate [a conveyance] is impaired to any degree by alcohol." R.S.C. 1985, c. C-46, 320.14(1)(a). Christianson argues that the language "to any degree" is a lower degree of impairment than North Dakota's "under the influence of intoxicating liquor" language.

[¶11] In *State v. Berger*, this Court stated:

> The expression 'under the influence of intoxicating liquor' simply means having drunk enough to *disturb the action of the physical or mental faculties so that they are no longer in their natural or normal condition*; that therefore, when a person is so affected by intoxicating liquor as to not possess that clearness of intellect and control of himself that he would otherwise have, he is 'under the influence of intoxicating liquor' and this is the common and well-known understanding of the expression.

*State v. Berger*, 2004 ND 151, ¶ 12, 683 N.W.2d 897 (citations omitted) (emphasis added). "It clearly is not the amount involved, but the effect that determines whether the person is under the influence of intoxicating liquor." *State v. Hanson*, 73 N.W.2d 135, 140 (N.D. 1955). Further, this Court has established two necessary elements to arrest a driver for driving while under the influence of alcohol. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 19, 663 N.W.2d 161. The first element is relevant to this case and states that "[t]he law enforcement officer first must observe *some signs of impairment*, physical or mental." *Id.* (citations omitted) (emphasis added). Christianson cites to the pattern jury instructions, emphasizing the language that "[t]he mere fact that the driver of a motor vehicle may have consumed intoxicating liquor does not

5

necessarily render the driver 'under the influence of intoxicating liquor.'" North Dakota Criminal Pattern Jury Instructions K-21.12, *Under the Influence of Intoxicating Liquor 1992* (2019). Canada's statute, however, does not make it a crime to operate a motor vehicle after consuming any amount of alcohol, but rather makes it an offense when the consumption has impaired the person's ability to operate the conveyance "to any degree." Looking at the emphasized language of this Court in *Berger* as well as *Sonsthagen*, we conclude the levels of impairment required under each offense are equivalent.

B

[¶12] Christianson next argues that the offenses are not equivalent because North Dakota's implied consent laws create a rebuttable presumption that a person is not under the influence if that person has a blood alcohol concentration of not more than five one-hundredths of one percent and the Canadian law creates a conclusive presumption by using the "any degree" language. We disagree. Under both North Dakota law and Canadian law, a criminal defendant is presumed innocent and the state must prove each element of a crime beyond a reasonable doubt. N.D.C.C. § 12.1-01-03(1); Criminal Code, R.S.C. 1985, c C-46, s 6; *R. v. Lifchus*, [1997] 3 S.C.R. 320 (Can.). Under both North Dakota and Canadian law, a person can be convicted for driving while intoxicated without the proof of a blood alcohol concentration or with evidence of a blood alcohol concentration under the legal limit. *State v. Pollack*, 462 N.W.2d 119, 122 (N.D. 1990); *R. v Dumont*, 2020 CanLII 47803, para. 99. If a defendant's blood alcohol concentration is below the legal limit in Canada, the prosecution must prove the person was "impaired to any degree" beyond a reasonable doubt to secure a conviction. The Canadian statute creates a rebuttable, not a conclusive, presumption. Similarly, even when a test result of not more than 0.05 raises North Dakota's presumption that the driver tested was not under the influence, the presumption may be rebutted by the same evidence the state would otherwise present to establish its ordinary burden of proof beyond a reasonable doubt on that element. We conclude the different presumptions presented here do not compel a determination that the statutes are not equivalent.

## C

[¶13] Christianson also argues that the two offenses are not equivalent because the Canadian statute does not include the first essential element found in the North Dakota statute. The element that Christianson alleges is essential is the language found in N.D.C.C. § 39-08-01(1) stating that "[a] person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state . . . ." Christianson argues that because the Canadian statute does not have any similar provision, allowing a person to be charged under the statute on any and all land, the Canadian statute is not equivalent to the North Dakota statute. The lack of similar language in the Canadian statute does not mean the offenses are not equivalent. An equivalent ordinance is one which "defines essentially the same offense." N.D.C.C. § 39-06.1-01(2). Here, the statutes proscribe essentially the same conduct, driving a vehicle while under the influence of an intoxicating substance. The North Dakota statute excludes driving that occurs on land not open to the public for vehicular use, but this exclusion implicates only a small fraction of potential offenses. The foreign statute must merely be equivalent to the North Dakota statute, and need not be identical. *Walter*, 391 N.W.2d at 160.

## D

[¶14] Christianson's final argument that the offenses are not equivalent is that the penalties for the two offenses are substantially different. This Court has stated that "for the purposes of driving suspensions, we do not believe that the differences in the penalties should be determinative of whether or not the statutes are equivalent." *Walter*, 391 N.W.2d at 159. Christianson points to dicta in *Walter* which implies that the differences in penalties could be so drastic as to contravene the intent of the North Dakota statute. *Id.* at 159-60. Christianson argues that because the Canadian penalties are much more severe than the North Dakota penalties, this Court should find that treating the Canadian statute as equivalent would contravene the intent of the North Dakota statute.

7

[¶15] The administrative penalty for a first offense of Operating While Impaired (OWI) under Canadian law is a prohibition from operating the type of conveyance in question for a period of not less than one year and not more than three years, plus the entire period to which the offender is sentenced to imprisonment. R.S.C. 1985, c. C-46, 320.24(1-2). In North Dakota, however, an individual who is convicted of a first offense of Driving Under the Influence faces a ninety-one day license suspension. N.D.C.C. § 39-06.1-10(8). The Canadian administrative penalty is substantially more severe than the North Dakota administrative penalty.

[¶16] Under Canadian law, an individual convicted of OWI by way of indictment can face a maximum of ten years' imprisonment while an individual convicted of OWI by way of summary conviction can face a maximum of either or both a $5,000 fine and no more than 729 days in prison. "A hybrid offence is an offence where the prosecutor can choose, based on factors such as the seriousness of the accused's actions and the harm caused, to proceed with the offence as either a summary conviction offence or as an indictable offence." Department of Justice, Criminal offences, Government of Canada, https://www.justice.gc.ca/eng/cj-jp/victims-victimes/court-tribunaux/offences-infractions.html (last modified July 24, 2015). Under the North Dakota statute, however, a first offense DUI is a class B misdemeanor, which is punishable by a maximum of thirty days' imprisonment and a $1,500 fine. N.D.C.C. § 12.1-32-01(6). The potential imprisonment period in Canada is substantially higher than in North Dakota.

[¶17] Although the potential penalties under the Canadian statute are substantially more severe, the differences are not so great as to indicate the statute proscribes a qualitatively different offense. This is not a situation where the foreign offense carries such minimal penalties that a person accused might lack sufficient motivation to contest a marginal or unfounded charge. To the contrary, the greater punishment attached to this foreign offense implies a greater motivation to contest a marginal charge and thus the benefits of the adversarial system would be invoked to increase the likelihood of a just outcome. Considering each of Christianson's arguments together, we conclude that despite these differences, the Canadian statute is equivalent to the North

8

Dakota statute. As a result, the Department had jurisdiction to suspend and disqualify Christianson's non-commercial and commercial driving privileges.

## III

[¶18] Christianson next argues that the hearing officer failed to provide him with a fair and impartial hearing. "All hearing officers shall . . . [a]ssure that all hearings and related proceedings are conducted in a fair and impartial manner." N.D.C.C. § 28-32-31(3). "To constitute an unfair, arbitrary or discriminatory hearing before an administrative agency, the defect or practice complained of must be such as might lead to a denial of justice or there must be an absence of one of the elements deemed essential to due process of law." *Pladson v. Hjelle*, 368 N.W.2d 508, 511 (N.D. 1985) (quoting *In re Township 143 North, Range 55 West, Cass County*, 183 N.W.2d 520, 534 (N.D. 1971)). Christianson argues that by not conducting the hearings for both the notice of suspension the Department received from Canada and the criminal conviction the Department received from Canada on the same day, the hearing officer failed to follow this standard. Christianson claims that by failing to hold all of the hearings at the same time, the Department caused him to incur more legal fees, complete a chemical dependency evaluation, and prematurely purchase SR-22 insurance, and further delayed reinstatement of his driving privileges. Regardless of whether the hearings had all been held on the same day or, as was done, on separate days, Christianson's counsel would have had to spend more time preparing and more time in the hearings. Further, the hearing officer recommended, and Christianson received, credit for the time during which his non-commercial and commercial driving privileges were administratively disqualified in connection with the same offense. Christianson has not shown any evidence that the practice of holding multiple hearings might lead to a denial of justice or that he was denied due process of law. Therefore, Christianson was provided a fair and impartial hearing.

## IV

[¶19] Christianson argues that the Department did not receive notice of the conviction from a "state" as defined by law and thus did not have jurisdiction to suspend or disqualify his non-commercial and commercial driving privileges.

9

Christianson contends that the conviction record provided by the foreign licensing authority shows only that it was from the state of "CAN" and that there is no such province of "CAN" in the Dominion of Canada.

[¶20] Under N.D.C.C. § 39-06-27(1), "[t]he director may suspend or revoke the operator's license . . . upon receiving notice of the conviction of that individual in a tribal court or in another state . . . ." "State" includes a province of the Dominion of Canada. N.D.C.C. § 39-01-01(85). The conviction record taken in its entirety shows the court location of Christianson's conviction was Yorkton, Saskatchewan, Canada. Therefore, the Department received notice of the conviction from a "state" under North Dakota law.

V

[¶21] Christianson's next argument is that the Department lacked authority and jurisdiction to suspend or disqualify his non-commercial and commercial driving privileges by the hearing officer's failure to be present in Mountrail County while conducting the hearing. Section 39-06-33(2), N.D.C.C., provides that "[a]ny hearing conducted under this section . . . must be heard within sixty days of the receipt of the request for hearing and in the county of the licensee's residence, unless the parties agree to a different hearing time and place for the hearing." It is apparent from the plain reading of the statute that the purpose of the hearing being held in the county of the licensee's residence is for the convenience of the licensee. The parties agreed to conduct the hearing telephonically. Christianson appeared at the hearing only via counsel, who telephoned in from Fargo, and Christianson did not make a personal appearance. By agreeing to a telephonic hearing, Christianson waived the right to have the hearing held in Mountrail County.

VI

[¶22] During the administrative hearings, the hearing officer admitted Exhibit 1 into evidence over Christianson's objection. Christianson challenges the admissibility of Exhibit 1 on the ground that it contains hearsay in the form of handwriting on the record. The Department's Exhibit 1 includes the notice of his conviction from the licensing authority in Canada and

10

Christianson's North Dakota driver's license record. These documents were certified by Brad Schaffer, Division Director, Drivers License Division, Department of Transportation, as true and correct copies as appears in the Department's files and records.

[¶23] Section 39-06-33(2), N.D.C.C., provides, in part, "[a]t the hearing, the regularly kept records of the director may be introduced and are prima facie evidence of their content without further foundation." Further, N.D.C.C. § 39-06-27(1) provides that driving privileges may be suspended on the basis of convictions which occur in other states and that "originals, photostatic copies, and electronic transmissions of the records of the driver's licensing or other authority of the other jurisdiction are sufficient evidence even if not certified copies." Section 39-06-22, N.D.C.C., provides:

> The director shall file all accident reports and abstracts of court records of convictions received by the director under the laws of this state and maintain convenient records or make suitable notations in order that each record of each licensee showing the convictions of the licensee and the traffic accidents in which the licensee has been involved is readily ascertainable and available for the consideration of the director.

The plain language of section 39-06-22 requires only that the Department's regularly kept driving records, and specifically notations, be "readily ascertainable" to the director and his designees. *See French v. Dir., N.D. Dep't of Transp.*, 2019 ND 172, ¶ 15, 930 N.W.2d 84 (finding that "the Department may properly construe its notations in the driving record kept by the Department, as long as the notation is 'readily ascertainable' to the director and his designees"). Nothing in the statute distinguishes between notations recorded in handwriting and notations that are typed, so long as they are readily ascertainable and available.

[¶24] In preparing driving records under section 39-06-22 as an official act, a disputable presumption applies that the director's official duty has been performed regularly. *See* N.D.C.C. § 31-11-03(15). The driving record from which the applicable suspension period and disqualification period are determined, including the handwritten notations, "is a regularly kept record,

11

and establishes prima facie its contents." *Isaak v. Sprynczynatyk*, 2002 ND 64, ¶ 9, 642 N.W.2d 860; *see also French*, 2019 ND 172, ¶ 15, 930 N.W.2d 84. The driver has the burden to rebut the prima facie evidence contained in the driving record. *See French*, at ¶ 16. Consequently, Christianson had the burden to rebut the prima facie evidence contained in the driving record. Christianson did not testify at the hearing to rebut the content of the Department's records as interpreted by the hearing officer, nor did he present anything to dispute that he was convicted for operating a conveyance while impaired. Thus, the hearing officer did not err in admitting Exhibit 1.

VII

[¶25] Christianson argues the Department's decisions should be reversed because the record is silent as to whether he received a fair trial in a fair tribunal for his alleged conviction and whether he was advised of the charges against him during the proceedings in Canada. We disagree. In *Holen v. Hjelle*, 396 N.W.2d 290 (N.D. 1986), this Court distinguished the prohibition on the use of uncounseled convictions to enhance penalties in a criminal case from the use of such convictions in a civil license suspension proceeding. *Id.* at 294. We explained that "the wide range of constitutional protections afforded in a criminal proceeding are not applicable to [license suspension] proceedings" and that the use of an uncounseled foreign conviction to increase the length of a license suspension did not violate the driver's due process rights. *Id.* at 294-95. Applying the rationale of *Holen* here, we conclude the record's silence on whether Christianson received due process in the Canadian proceedings does not preclude the Department from relying on the Canadian suspension to suspend and disqualify his driving privileges in North Dakota.

[¶26] Lastly, Christianson argues that he is entitled to reasonable attorney's fees and costs. Under N.D.C.C. § 28-32-50, the nonadministrative party must first prevail before attorney's fees may be properly awarded. Christianson has not prevailed and therefore is not entitled to reasonable attorney's fees and costs.

## VIII

[¶27] The district court judgment affirming the Department's suspension and disqualification of Christianson's noncommercial and commercial driving privileges is affirmed.

[¶28] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte